UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **HAWTHORNE INDUSTRIAL PRODUCTS, INC.**<br>　　　　　　**Plaintiff**<br><br>**VERSUS**<br><br>**HANWIN SHIPPING LIMITED**<br>also known as<br>**HANWIN SHIPPING COMPANY LIMITED,**<br>**SHANGHAI HANYING INTERNATIONAL LOGISTICS CO., or**<br>**CITY EXPANSION LIMITED,**<br>　　　　　　**Defendants**<br><br>**AND**<br><br>**AMERICAN SHIPPING AND CHARTERING CORP.,**<br>　　　　　　**Garnishee** | **CIVIL ACTION NO.:**<br><br>**DISTRICT JUDGE:**<br>**HON.**<br><br>**MAGISTRATE JUDGE:**<br>**HON.** |

## VERIFIED COMPLAINT

Plaintiff Hawthorne Industrial Products Inc. ("Hawthorne" or the "Plaintiff"), as consignee of certain cargo, by and through its undersigned attorneys, respectfully submits this Verified Complaint against defendant Hanwin Shipping Limited ("Hanwin" or the "Defendant") also known as Hanwin Shipping Company Limited, Shanghai Hanying International Logistics Co., or City Expansion Limited (collectively, the "Alter Egos"), and garnishee American Shipping and Chartering Corp. ("American Shipping" or the "Garnishee"), and alleges upon information and belief as follows:

## JURISDICTION AND VENUE

1. This is a claim within this Honorable Court's admiralty and maritime jurisdiction, 28 U.S.C. § 1333, and this is also an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. The claims herein are brought under Rule B to the Supplemental Rules for Admiralty or Maritime Claims & Asset Forfeiture Actions ("Rule B").

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because, upon information and belief, the Defendant's property is or soon will be located within this District that may be attached through the process of maritime attachment and garnishment pursuant to Rule B—*e.g.*, funds which may presently be in the care, custody, and control of the Garnishee.

## THE PARTIES

3. Plaintiff Hawthorne is a corporation organized and existing pursuant to the laws of the state of Florida and with a principal place of business located at 10694-B South US Highway 1, Port St. Lucie, Florida 34952, and at all times relevant hereto was engaged in the business of importing wood products from overseas as consignee, including the "Cargo" described more fully described in *Schedule A* (attached hereto as Exhibit "A") and *Schedule B* (attached hereto as Exhibit "B").

4. Plaintiff Hawthorne is entitled to maintain this action and brings this action for its own account as consignee of the Cargo and on behalf of any and all other third parties who may be or might become interested in the Cargo as each of their respective interests may appear.

5. Upon information and belief, at all times relevant hereto, defendant Hanwin, an entity that charters vessels and carries ocean cargo, was a company organized and existing under the laws of a foreign country and located in China.

6. Upon information and belief, Hanwin and its Alter Egos all share the same owners, ultimately an individual named Jiang Churong, and office address, Room 802, Magnolia Plaza,

No. 777 Hongqiao Road, Shanghai, China, and upon further information and belief, operate interchangeably including for the purpose of avoiding liability to Hawthorne for Hanwin's breaches of contract and maritime torts described herein. *See*, *e.g.*, *Verified Complaint with Request for Issue of Writ of Maritime Attachment and Garnishment*, Docket No. 1, *Transatlantica Commodities Pte Ltd v. Hanwin Shipping Limited*, Case No. 22 Civ. 2454 (filed August 2, 2022).

7. Upon information and belief, garnishee American Shipping was formed in Texas, has a place of business at 11451 Katy Freeway, Suite 300, Houston, Texas 77079-2009, "admits that it is the agent of Hanwin" and admits that it holds funds paid to it by Hanwin in a "separate bank account" for the purpose of paying third party vendors servicing Hanwin's vessels. *See Answer of Garnishee American Shipping and Chartering Corporation ("ASCC") and Motion to Vacate of Modify Rule B Order*, Docket No. 15 at ¶¶ 2(d) and 6, *Transatlantica Commodities Pte Ltd v. Hanwin Shipping Limited*, Case No. 22 Civ. 1983 (S.D. Tex. filed July 25, 2022). American Shipping may also be served through its registered agent for service of process, C T Corporation System, 1999 Bryan St., Ste 900, Dallas, TX 75201.

## THE FACTS

### Hanwin – Charterer and Carrier

8. Upon information and belief, at all times relevant hereto, defendant Hanwin chartered the vessels TAC IMOLA and INDIGO SPICA.

9. Upon information and belief, it is customary in the maritime industry for a charterer like Hanwin to appoint a local ship agent for the purpose of arranging for third party vendors to service the charterer's vessels.

**TAC IMOLA – *Schedule A***

10.     Upon information and belief, at all times relevant hereto, defendant Hanwin chartered the TAC IMOLA.

11.     Upon information and belief, on or about November 20-25, 2021, at Qingdao, China, the Defendant accepted and loaded approximately 9,667 crates of MDF Panels, Pinus Sylvestris Plywood, and Plywood (*i.e.*, the "*Schedule A* Cargo") aboard the TAC IMOLA for carriage to Baltimore, Maryland.

12.     Upon information and belief, the TAC IMOLA was expected to arrive in Baltimore around January 8, 2022.

13.     Upon information and belief, on or about November 24-25, 2021, the Defendant issued and/or ratified the Bills of Lading for the Cargo, each of which are signed and stamped at the bottom-right in Chinese and English by "LI SONG OF THE M/V TAC IMOLA" as "AGENT FOR AND ON BEHALF OF THE MASTER" and by "ZHENHUA INTERNATIONAL SHIPPING AGENCY (QINGDAO) CO. LTD." as "AGENT FOR THE CARRIER OF THE B/L TITLE."

14.     All of the Bills of Lading are "clean" meaning that no exceptions were taken by the Defendant as to the good order and condition of the *Schedule A* Cargo at the time it was accepted and loaded on the Vessel.

15.     Upon information and belief, the Defendant also accepted and loaded other cargo including twenty-foot metal containers stuffed with computer equipment which were placed directly on top of the *Schedule A* Cargo in hold numbers 2 and 4.

16.     Upon information and belief, the Defendant was responsible for safely and properly loading, stowing, and securing all of the *Schedule A* Cargo on board the TAC IMOLA.

17. Upon information and belief, the Defendant failed to safely and properly load, stow, and secure all of the *Schedule A* Cargo on board the TAC IMOLA.

18. Upon information and belief, as a consequence of the Defendant's failure to safely and properly load, stow, and secure all of the *Schedule A* Cargo on board the TAC IMOLA, the *Schedule A* Cargo moved, shifted, and collapsed during the voyage.

19. Upon information and belief, on or about December 3, 2021, while east of Japan, the TAC IMOLA's crew observed smoke and fire in cargo hold number 4.

20. Upon information and belief, the TAC IMOLA's crew extinguished the fire in cargo hold number 4 by using $CO_2$.

21. Upon information and belief, after the first fire, the Defendant ordered the TAC IMOLA to deviate back towards Japan.

22. Upon information and belief, on or about December 9, 2021, instead of calling in Japan, the TAC IMOLA anchored back near Qingdao.

23. Upon information and belief, the TAC IMOLA stayed at anchor off Qingdao for twenty days.

24. Upon information and belief, on or about December 29, 2021, the TAC IMOLA began to sail towards Kunsan, Korea.

25. Upon information and belief, on or about December 30, 2021, while drifting outside Kunsan's port limits, the TAC IMOLA's crew observed smoke and fire in cargo hold number 2.

26. Upon information and belief, the TAC IMOLA's crew attempted to extinguish the fire in cargo hold number 2 by using $CO_2$, but failed.

27. Upon information and belief, on or about January 3, 2022, the TAC IMOLA berthed at Kunsan.

28.     Upon information and belief, on or about January 4, 2022, the TAC IMOLA's crew again attempted to extinguish the fire in cargo hold number 2 by using CO2, but failed.

29.     Upon information and belief, on or after January 5, 2022, the TAC IMOLA's crew flooded cargo hold number 2 with seawater to extinguish the second fire.

30.     Although the first fire is believed to have occurred around December 5, 2021, and the second fire is believed to have occurred around December 30, 2021, plaintiff Hawthorne was not notified about the fires until February of 2022.

31.     Moreover, upon information and belief, the information provided to Hawthorne at the time of notification was at least in part inaccurate:

> ALTHOUGH IT WAS A VERY HOT FIRE IT LOOKS LIKE THE FIRE WAS CONTAINED TO ONE CONTAINER ON DECK.
>
> IN PUTTING THE FIRE OUT, IT CAUSED TROUBLES MAINLY CONTAINED TO HOLD 4 AND IT CAUSED TROUBLES TO ONE OTHER HOLD.
>
> SOME WATER USED IN PUTTING OUT THE FIRE LEAKED INTO TWO HOLDS ALSO.

32.     As a consequence of the late notice, Plaintiff was deprived of an opportunity to inspect the nature of the damage, assess the extent of the damage, and investigate the cause or source of the damage when the TAC IMOLA deviated and berthed in Kunsan, where other surveyors and experts disturbed crucial evidence.

33.     Upon information and belief, as time passed, the *Schedule A* Cargo onboard the TAC IMOLA became so badly damaged, moved, shifted, collapsed, crushed, charred, heated, wetted, warped, decayed, and decomposed that stevedores at the discharge port of Baltimore refused to unload it due to health and safety concerns.

34. Upon information and belief, the Defendant ordered the TAC IMOLA to deviate to Newark, New Jersey, where it unloaded the twenty-foot metal containers stuffed with computer equipment, which had gouged the insides of the TAC IMOLA's freshly painted cargo holds.

35. Upon information and belief, the Defendant thereafter caused the TAC IMOLA to deviate to Albany, New York, where it began to discharge some of the *Schedule A* Cargo on or about March 5, 2022.

36. Upon information and belief, before all of the *Schedule A* Cargo was unloaded in Albany, a dispute arose between the terminal in Albany and the Defendant, and the Defendant ordered the TAC IMOLA to deviate to an anchorage off Long Island, New York.

37. Upon information and belief, while the TAC IMOLA was anchored off Long Island, further disputes arose between defendant Hanwin and the TAC IMOLA's owners and/or disponent owners, causing the TAC IMOLA to be further delayed and the *Schedule A* Cargo to become further warped, decayed, and decomposed.

38. The Plaintiff, in order to mitigate its own damages and without prejudice to its rights, paid outstanding costs of discharging at Albany and, in addition, prepaid some of the costs of discharging at Baltimore.

39. But, upon information and belief, the dispute between defendant Hanwin and the TAC IMOLA's owners still had not been resolved.[1]

40. Therefore, the Plaintiff, in order to continue to mitigate its own damages and without prejudice to its rights, prepaid the costs of discharging at Coeymans, New York.

---

[1] *See e.g.*, Transatlantica *Commodities Pte Ltd v. Hanwin Shipping* Limited, Case No. 22 Civ. 1275 (D Md filed May 27, 2022); *Transatlantica Commodities Pte Ltd v. Hanwin Shipping Limited*, Case No. 22 civ. 3348 (D NJ filed June 1, 2022); *Transatlantica Commodities Pte Ltd v. Hanwin Shipping* Limited, Case No. 22 Civ. 1983 (SD Tex filed June 17, 2022); Hanwin *Shipping Limited v. Transatlantica Commodities Pte* Ltd, Case No. 22 Civ. 11182 (D Mass filed July 22, 2022); and *Transatlantica Commodities Pte Ltd v. Hanwin Shipping Limited*, Case No. 22 Civ. 2454 (ED La filed August 8. 2022).

41. Upon information and belief, the TAC IMOLA arrived at Coeymans on or about May 21, 2022, and resumed discharging some of the *Schedule A* Cargo.

42. Upon information and belief, the Defendant ordered the TAC IMOLA to depart Coeymans before discharge was completed.

43. Upon information and belief, on or about June 1, 2022—*i.e.*, about seven months after departing Qingdao—the TAC IMOLA finally arrived at its originally intended discharge port of Baltimore.

44. Upon information and belief, in the ordinary course, the Defendant was obligated to unload and deliver the *Schedule A* Cargo in Baltimore.

45. Despite requests to the Defendant for information and documents concerning the cause of the casualties and responsibility therefore, the Defendant has not provided any relevant information or documents.

46. The damages to the *Schedule A* Cargo together with the additional costs and expenses incurred by Plaintiff at the port of discharge, including but not limited to stevedoring costs and other related handling costs of the *Schedule A* Cargo, are in an amount that can now be estimated to be not less than $28,000,000 which continues to accrue.

## INDIGO SPICA – *Schedule B*

47. Upon information and belief, on or about April 22, 2022, at Qingdao, China, the Defendant accepted and loaded approximately 7,155 crates of Pinus Sylvestris Plywood (*i.e.*, the "Cargo") aboard the INDIGO SPICA for carriage to Baltimore, Maryland.

48. Upon information and belief, on or about April 22, 2022, the Defendant issued and/or ratified the Bills of Lading for the *Schedule B* Cargo.

49. Upon information and belief, the Defendant was responsible for safely and properly loading, stowing, and securing all of the *Schedule B* Cargo on board the INDIGO SPICA.

50. Upon information and belief, the Defendant failed to safely and properly load, stow, and secure all of the *Schedule B* Cargo on board the INDIGO SPICA.

51. Upon information and belief, the INDIGO SPICA arrived in Baltimore on or about July 19, 2022.

52. Upon information and belief, once the INDIGO SPICA arrived in Baltimore, it was found that as a consequence of the Defendant's failure to safely and properly load, stow, and secure all of the *Schedule B* Cargo on board the INDIGO SPICA, the *Schedule B* Cargo moved, shifted, and collapsed and suffered extensive damages during the voyage.

53. The damages to the *Schedule B* Cargo together with the additional costs and expenses incurred by Plaintiff at the port of discharge, including but not limited to stevedoring costs and other related handling costs of the *Schedule B* Cargo, are in an amount that can now be estimated to be not less than $6,500,000 which continues to accrue.

### AS AND FOR A FIRST CAUSE OF ACTION FOR BREACH OF MARITIME CONTRACT

54. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1-53 above.

55. The *Schedule A* and *Schedule B* Cargo was in good order and condition when tendered to and accepted by the Defendant at the load port, but it was not delivered to Plaintiff at the discharge port in the same good order and condition; instead, the *Schedule A* and *Schedule B* Cargo was damaged, moved, shifted, collapsed, crushed, and destroyed.

56. By virtue of the Defendant's breaches of the contracts of carriage, Plaintiff has incurred losses and damages estimated to be $34,500,000 which continue to accrue.

## AS AND FOR A SECOND CAUSE OF ACTION FOR
## MARITIME TORT

57. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1-56 above.

58. The *Schedule A* and *Schedule B* Cargo was in good order and condition when tendered to and accepted by the Defendant at the load port, but it was not delivered to Plaintiff at the discharge port in the same good order and condition; instead, the *Schedule A* and *Schedule B* Cargo was damaged, moved, shifted, collapsed, crushed, and destroyed.

59. By virtue of the Defendant's tortious conduct including their failure to make the vessels seaworthy, failure to exercise due care for the custody of the cargo, breach of bailment, conversion, misinformation, and reckless and gross negligence, Plaintiff has incurred losses and damages estimated to be $34,500,000 which continue to accrue.

## AS AND FOR A THIRD CAUSE OF ACTION FOR
## RULE B MARITIME ATTACHMENT

60. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1-59 above.

61. The requirements of Rule B are met. First, Plaintiff has valid maritime claims, breach of maritime contract and maritime tort claims, against the *in personam* Defendant.[2]

62. Second, Rule B of the Federal Supplemental Rules for Admiralty or Maritime Claims authorizes a maritime claimant to attach a defendant's property within a district if the defendant cannot be found within the district. The *in personam* Defendant and its Alter Egos cannot be found within this district.[3]

63. Third, upon and information and belief, defendant Hanwin, has, or soon will have during the pendency of this action, property located within this District. More particularly, upon

---

[2] *See, e.g.*, *Amended Verified Complaint*, Docket No. 29, *Hawthorne Industrial Products Inc. v. M/V TAC IMOLA*, Case No. 22 Civ. 1376 (D Md filed July 8, 2022); and *Verified Complaint*, Docket No. 1, *Hawthorne Industrial Products Inc. v. M/V INDIGO SPICA*, Case No. 22 Civ. 1946 (D Md filed August 5, 2022).
[3] *See* attached Attorney's Declaration that Defendants Cannot be Found Within the District.

information and belief, garnishee American Shipping possesses property of Hanwin in the form of funds being held in a segregated bank account.

64. Fourth, there is no statutory bar to recovery.

65. The *in personam* Defendant has so far deposited only $455,578.01 as security for plaintiff Hanwin's claims as of the date of this *Verified Complaint*, leaving $34,044,421.99 of Hawthorne's claims presently unsecured.[4]

66. Accordingly, Plaintiff seeks jurisdiction over defendant Hanwin through attachment of its property. Pursuant to Rule B, Plaintiff requests that this Court issue an order and writ of garnishment and enter judgment against the *in personam* Defendant.

67. Plaintiff Hawthorne agrees to release and hold harmless and indemnify the United States of America, the United States Marshal, their agents, servants, employees and all others for whom they are responsible from any and all liability or responsibility for claims arising from the attachment of Hanwin and its Alter Egos' property, including, but not limited to, funds held by garnishee American Shipping on behalf of defendant Hanwin and its Alter Egos.

**WHEREFORE**, Plaintiff respectfully prays:

A. That this Honorable Court issue an order directing the clerk to issue a writ of maritime attachment and garnishment of the *in personam* Defendant's assets within this District pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions;

B. That any security thereafter fixed by this Honorable Court be conditioned for the maximum amount permitted by Rule E(5), which permits up to twice the amount of Plaintiff's claim;

---

[4] *See Notice of Compliance*, Docket No. 33, *Hawthorne Industrial Products v. Hanwin Shipping Limited*, Case No 22 Civ. 2724 (ED La filed Aug. 29, 2022).

C.  That this Honorable Court issue judgment against the Defendants in an amount in excess of $34,500,000 plus interest, fees, and costs; and

D.  That this Honorable Court grant such other and further relief as it deems just and proper.

Dated: September 7, 2022
       Houston, Texas

    Respectfully submitted:

    ***/s/ Aaron B. Greenbaum***
    Aaron B. Greenbaum T.A. (#24110938)
    SDTX Federal ID No.: 2023921
    Salvador J. Pusateri (#24072867)
    SDTX Federal ID No.: 438301
    PUSATERI, JOHNSTON, GUILLOT &
    GREENBAUM, LLC
    1100 Poydras Street, Suite 2250
    New Orleans, LA 70163
    Telephone: 504-620-2500
    Facsimile: 504-620-2510
    Aaron.Greenbaum@pjgglaw.com
    Salvador.Pusateri@pjgglaw.com

    and

    Robert E. O'Connor (*pro hac vice* to be filed)
    MONTGOMERY MCCRACKEN
    WALKER & RHOADS LLP
    437 Madison Avenue
    New York, NY 10022
    Telephone: 212-867-9500
    roconnor@mmwr.com

    *Attorneys for Plaintiff*
    *Hawthorne Industrial Products, Inc.*

**Please Issue Summons to**:
Hanwin Shipping Limited,
also known as Hanwin Shipping Company Limited,
Shanghai Hanying International Logistics Co.,
or City Expansion Limited
Room 802, Magnolia Plaza, No. 777
Hongqiao Road, Shanghai, China